Hemphill, Ch. J.
The appellant has assigned various grounds of error, among which the two first are to the effect that the court erred in striking out the plea of the statute of limitations.
There are various other alleged errors, and some of them present interesting’ questions, but as this cause has been argued but'briefly by the appellant, anil was submitted without argument by the appellees, I shall discuss only the question raised by the rulings in regard to the plea of limitation and possession under the statute.
It may seem strange that this defense was not pleaded until some two years after suit. This arose, perhaps, from a supposition that the defense would, as a matter of evidence,, be available under the general issue. This was unquestionably the rule in actions of ejectment. The defendant was not bound to plead the statute; for as the plain tiff had to prove his right to the possession, whatever operated as a bar of that right, as for instance the statute of limitations, caused a failure of such proof, and entitled the defendant to a verdict. (Adams on Ejectment, p. 270; 1 Burr. R., 60; 2 Smith’s Leading Cases, p. 389.) But notwithstanding such is the rule in actions for the recovery of real estate, yet the practice of setting up the statute by special plea has in this State been general, and there is peculiar propriety in pleading specially in such actions. There is certainly more reason for setting up the statute by p^ea in actions for lands than in relation to other matters.' There are several distinct defenses under the statute as against suits for real estate, and by plea the issue is rendered more certain, the other party thus receiving notice of the special limitation relied upon.
But the reasons which may exist for or against pleading the statute in any particular action have now become but matter of fruitless speculation, as by the 5th section of the act of February 5th, 1S52. it is declared that the statute of limitation shall not be made available to any person in any suit in, any of the courts of this State, unless it be specially set forth as a defense in ’ their answer. This provision was, from its terms, manifestly intended to be quite comprehensive. It certainly embraces all actions in all courts in which, the defendants put in any answer, and in which, by the rules of procedure,' their answer is required to be in writing. Consequently it abrogated the gen-, eral rule which, in actions to try title to land let in, under the general issue, the defense of the statute.
This statute became of force about the last of TIarch, 1852, and was in operation when the last amended pleas of limitation were filed in this suit.
The question, then, is whether the matters presented by the plea embraced the essential elements of the defense as prescribed in the statute.
The provision which is invoked is to the effect that every suit to recover' real estate as against a possessor under litle or color of title shall be instituted within three years after the cause of action shall have accrued, and not after-wards, saving the disabilities of minority, coverture, insanity, &e. The term title is defined a regular chain of transfer from or under the sovereignty of ’ the soil, and color of title, a consecutive chain of such transfer down to the party in possession without being regular, as if one or'moro of' the memorials or muniments be not registered, or not duly registered, or be only in writing,, or such like defect as may not extend to or include the want of intrinsic fairness and honesty, or when the party in possession shall hold the same by a. certificate of headlight, or land warrant, or land scrip with a chain to transfer down to him, her, or them in possession, with the proviso that this section, should not bar tins right of the government.
As tested by this provision does not the plea aver all,the facts necessary to constitute it an effectual defense? It alleges actual'possession (of the portion *194 of the land sued for which is claimed by the defendant) for three years antecedent to the commencement of the suit; that this possession was adverse; that it was taken and held under color of title. The statute does not, in express terms, require the possession to he adverse; but, as it must be adverse to be effectual, it seems that a statement of its hostile character is a necessary element of the plea, in the same way that if the color of title be a headlight of the first class, and this be averred, there must be the further averment that it was duly recommended as a genuine claim.
The defendant could not be required to allege more than the material facts which constituted tlio ingredients of his plea. But he has gone further and alleged matters which are properly but evidence in support of his defense. lie has alleged the time of taking possession, nearly six years prior to suit, and Ills subsequent continuous adverse possession. He has set forth the special color of title under which he claims, being liis own headlight duly recommended, located, and surveyed, and which, subsequent to the suit, was patented — a color of title recognized by the statute as sufficient.
■Whether the plea be in form or not, whether drawn with technical accuracy or otherwise, the facts alleged constitute the materials of the statutory bar, and tlio pica with reference to tlio section above cited has legal sufficiency. All that wasincccssary to the plea might have been briefly expressed, pursuing the terms of the statute. But the pica is not to be rejected for its redundancy in the statement of facts more properly belonging to the evidence than to the pleading, unless the facts show that there was no such possession or color of title as is averred in the plea.
From the appellant’s brief it might he inferred, as the ground for the rejection of the plea, that, in the opinion of the court below, occupancy for three years under color of title afforded tito defendant no protect ion, notwithstanding the terms of the loth section, (art. 2391,) and that this was the result of the force and effect which must bo given to the 14th or preceding section. This section (among other matters) substantially declares that a person having'a right of entry into lands shall make entry therein within ten years next after his right shall have accrued, on penalty of being barred forever thereafter. What may he the meaning, scope, and force of this section, when considered with reference especially to other provisions of the statute, is not very perceptible, and without argument by counsel, I shall not attempt a full discussion of the important questions which might be raised as to its true construction.
It was not intended, certainly, as might he supposed from the literal import of the terms, that every owner of real estate must within ten years from the accrual of his title make entry upon his lauds or he thereafter debarred of all right therein. It could not have been imagined that actual entry upon the land was necessary to give seizin or investiture or to give a more perfect title. With respect to many of the ancient titles there had been at the grant what is called livery or seizins; that is, corporeal tradition in the presence of the, vicin-age, the grantee pulling up grass, throwing stones, and exclaiming with loud voices. &e., in evidence of proprietorship. With most of our titles there, was no such ceremony, They were never, however, supposed, to be the less complete and perfect for the want of such investiture. The title here as elsewhere in the American States has always been supposed to draw to it the legal seizin aud possession, which possession is retained by the grantee, until he is ousted thereof by an actual possession in another under a claim of right. (8 Crunch, 415; 4 Wheaton, 215; 6 Peters, 691, 743; 2. Smith’s Leading Cases, p. 413; Angelí on Limitation, 400.)
There is no legal necessity, then, for entry, unless the land ho claimed and held adversely by another.
Hor can the section relative to the right of entry ho construed to have any effect upon the right of possessors as guaranteed by the 15th, lGth, and 17th sections of the statute. Those sections, together with the 30th section of the act of 1S3G, (art. 2375.) evince the settled polir-y of the government to *195 protect the actnal possessors, through whose agency alone the soil could he cultivated, houses built, improvements made, and the wilderness reduced to civilization.. It is well known that the titles to immense bodies of our lands were, especially at the period of the passage of these laws, conflicting and uncertain. . Superaddod to these difficulties extensive portions of our frontiers were also infested by the incursions of ferocious and hostile savages. This insecurity of title prevailing so ext onsively, and, in addition, on the frontiers, the perils to be continually encountered, pressed with the weight of an incubus oil the prosperity of tlie country. Anti the settlement of the frontiers especially could not advance unless there was some security that the lands conquered from savages and beasts of prey should become the property of the actual conqueror and settler of the soil, provided that if there were a claimant having c-quitable or legal title he should have a reasonable time to set up and establish his claim.
Tlie experience of this and other countries furnishes the most abundant proof that tlie improvement and settlement of a country are paralyzed by the uncertainty of titles to real estate. Labor will not be exerted when its fruits are insecure and may possibly go to the benefit of another.
To obviate evils springing from this state of tilings, to give repose and security to title, to secure tfie advancement, settlement, and improvement of the couutiy, the legislature fixed certain periods beyond which tlie actual occupant of tlie soil should not he disturbed in his possession by any interfering claim whatever.
The act- of 1S36 provides that the actual settler and citiz.en holding peaceable possession of a tract of laud under a color of title duly proven and recorded in the proper county for a term of five years from and after recording the said color of title or titles his claim shall lie considered good and valid, barring the claims of any and every parson or persons whomsoever. The 15th section of the act of limitations of 1S41, and which is directly in question in this suit, declares that suit to recover real estate, as against him in possession, shall not be brought unless instituted witliiu three years after the accrual of tlie cause of action. The 10th section (art. 2392) declares that peaceable possession for five years of real estate, tlie same being cultivated, used, and enjoyed, and tax, if any, being paid thereon, under a deed or deeds duly registered, shall give full title, precluding all claims; and by the 17th section (art. 2393) it is provided that ten years of such peaceable possession and cultivation and enjoyment without evidence of title shall give the naked possessor full property, preclusive of all other claims, in and to six hundred and forty acres of land, including ins improvements.
Can it be pretended that tlie legislature, by its limitation of the'right of entry to ten years in the 14th section, intended to thwart its policy,, as manifested in the other section, in favor of actual settlers and possessors, and to defeat the rights guaranteed by their occupancy with the requisites which constitute the bar in their particular cases? By the act of 1833, and by the 13th and 17th sections of the statute of 1841, possession under the circumstances and with the requisites prescribed is declared to give full title, precluding all claims. Can it be imagined that by the provision in relation to the right of entry .any other claimant may enter on tlie laud after the lapse of five or ten 3rears, as the case may be, and thereby defeat the previous limitation, and that the term must again elapse, without action brought, before tlie bar would he complete, and the possession would in fact preclude all other claims? Such construction would be repugnant to tlie plain import of tlie terms employed, and would he directly at war with the manifest intention and cherished policy of the law.
. It is true that possession under the 15th section does not in terms give full title, precluding other claims; hut it does what is equivalent; it inhibits suit, unless brought within three years from the accrual of the cause of action. When does the cause of action accrue? Unquestionably at the instant of possession taken under the circumstances specified in tlie statute, viz, *196 under title or color of title, according- to tlie definition of these terms as given in tlie law itself. Possession for tlie'time limited exempts the occupant from subsequent suit. To allow a claimant to enter after the expiration of the three years, and to hold that such entry would give him a cause of action on which suit could be maintained, would contravene not only the direct terms, but the spirit aud policy of the statute.
One of tlie difficulties experienced in the construction of the statute is that we have not the aid of tlie decisions of other tribunals iu the construction of similar provisions. Neither in the statute of James tlie 1st nor. iu those of most of tlie States is there any express provision in favor of adverse possession. The rights under such possession are not directly guaranteed. Legislation -is confined to the right as against such possession, viz., tlie right of entry. That is limited to some defined term. The only question under such statutes is whether the land has been held adversely through tlie period to which the right of entiy of the other party is limited. If soj the claimant is barred.
In the Tennessee statute of 1819 seven years’ adverse possession gives tlie possessor a title iu fee simple; but iu the same statute the right of entry and suit by the claimant under legal or equitable title is also restricted to tlie same period, viz, that of seven years.
The statutes of Kentucky are in principle similar to our own in relation to the difference between the time limited for entry and that which, under certain circumstances, will protect an adverse possession. The right of entry, under the general law, extends to twenty years; but, under the ten years’ act of February, 1809, this right and the claim are barred in ten years as against an actual settler, under an adverse interfering- entry, survey, or patent.' The reports of decisions in the courts of Kentucky, in which questions arising under this statute have been discussed, are not accessible to this court; but, I presume, no case can be found in which, where possession was taken under the circumstances enumerated in the statute, the bar of ten years'was not held good, on the ground and for tlie reason that the claimant, as against adverse possession generally, liad twenty years within which to make his entry.
This, at all events, is,the only rational construction which can be given to the provisions of our Own statute.
Possession taken aud held with the requisites and under the circumstances specified in the various,provisions of the statute, and for the time limited in the section under which tlie possessor sets up his right, forms an effectual bar to the prosecution of any suit or claim as against "snob possession. If there be any species of adverse possession not defined in the various provisions of the statute, if it can assume any phase not therein described as against such adverse possession, as claimant under title would have the right secured by tiie 14th section, viz, the right of entry within ten years; but he has no such right as against au occupant'ivho has entered aud held in any of the modes specified in tlie law.
We are of opinion that the court erred in- sustaining the exception to the jilea of tlie statute of limitations; and it is ordered, adjudged, and decreed that the judgment be reversed and cause remanded.
Reversed and remanded.
Note 74. — Whitehead v. Foley, 23 T., 268.