HARRIS et al. v. KIBER et al.   (No. 6726.)†

(Court of Civil Appeals of Texas.  Galveston. Feb. 18, 1915.  On Motion for Rehearing, May 13, 1915.  Appellees' Motion for Rehearing Denied June 10, 1915.)

1. TRESPASS TO TRY TITLE ☞38—PLEADING —ADMISSIONS—EFFECT.

Though the action was in the form of trespass to try title, yet where the pleadings showed that it involved only an issue of boundary, and the answer of defendants expressly averred that the issue was one of boundary between the lands of plaintiffs and defendants, the answer was an admission, relieving plaintiffs' of the necessity of proving title to their land, notwithstanding defendants' plea of not guilty.

[Ed. Note.—For other cases, see Trespass to Try Title, Cent. Dig. § 53; Dec. Dig. ☞38.]

2. TRESPASS TO TRY TITLE ☞11—ACTIONS— PROOF.

In an action of boundary, where both deraigned title from the same source, plaintiff need not prove his title.

[Ed. Note.—For other cases, see Trespass to Try Title, Cent. Dig. § 14; Dec. Dig. ☞11.]

On Motion for Rehearing.

3. BOUNDARIES ☞48—AGREED BOUNDARIES— EFFECT.

Grantees of part of a tract of land are not bound by any line, other than that fixed in their deed, unless they consent to the establishment of a line, or have acquiesced in the establishment of a boundary by the grantees of the other part.

[Ed. Note.—For other cases, see Boundaries, Cent. Dig. §§ 232–242; Dec. Dig. ☞48.]

4. BOUNDARIES ☞37—ACTIONS—EVIDENCE— SUFFICIENCY.

In a suit involving disputed boundary, evidence held insufficient to show that the line was as claimed by plaintiffs.

[Ed. Note.—For other cases, see Boundaries, Cent. Dig. §§ 184–194; Dec. Dig. ☞37.]

5. ADVERSE POSSESSION ☞100—WHAT CONSTITUTES.

Where defendants held continuous adverse possession of land for the statutory period, claiming it under their deeds, their holding ripened into adverse title, even if the dividing line had previously been located at a place other than that called for in defendants' deeds.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 547–574; Dec. Dig. ☞ 100.]

Appeal from District Court, Wharton County; Samuel J. Styles, Judge.

Action by Emma D. Kiber and others against John W. Harris and others.  From a judgment for plaintiffs, defendants appeal. Reversed and rendered.

G. G. Kelley, of Wharton, and Williams & Neethe, of Galveston, for appellants.  W. L. Hall, of Wharton, and Masterson & Rucks, of Angleton, for appellees.

PLEASANTS, C. J.  This suit was brought by appellee Emma D. Kiber, joined pro forma by her husband, F. Kiber, against the appellants, in the form of trespass to try title to a tract of 88.13 acres of land on the R. Kuykendall league, in Wharton county.  The defendants answered by general demurrer, special exceptions, and general and special denials of the allegations of the petition.  The answer also contained pleas of limitation of three, five, and ten years, and the following special plea:

"And for further answer herein defendants say that the issue in this case is one of boundary between the lands of plaintiffs and defendants; that plaintiffs and those under whom they claim have acquiesced in the boundary of the land claimed by these defendants, and in the quantity of said land, for more than 50 years before this suit was brought; and that the defendants had their land run out by careful and competent surveyors a number of years ago, one of whom was the county surveyor of Wharton county, and defendants placed their fence on the line so established by them, and plaintiffs acquiesced therein, and said fence has remained on said line ever since, until the institution of this suit, without complaint from plaintiffs, although they have known of its location.  Wherefore defendants say that plaintiffs are estopped from claiming said line to be elsewhere."

The trial in the court below without a jury resulted in a judgment in favor of plaintiffs for the 88.13 acres of land described in their petition, and establishing the boundary line of said land as claimed by them.  At the request of appellants the trial judge filed conclusions of fact and law.  After stating that the suit was brought in the form of an action of trespass to try title, and giving the description of the land contained in the petition, the conclusions of fact and law contain the following:

"While plaintiff's suit was instituted as one of trespass to try title to the 88.13 acres of land above described, plaintiff during the trial of said cause stated and treated the same as a boundary suit, and defendants during the trial of said cause treated the same as a boundary suit; the following allegations appearing in defendants' pleadings: [Here follows defendants' special plea before set out.]

"Finding of Facts.

"(1) The court finds that this is a suit for the purpose of establishing the boundary line between the lands owned by plaintiff and the defendants in the Kuykendall league of land, in Wharton county, Texas.

"(2) That the Kuydendall league of land was granted to Robert Kuykendall July 16, 1824, and in 1878 Kuykendall sold the upper or west half of said league to Stephen F. Austin; that thereafter the said Stephen F. Austin died, leaving a one-half of his property to his sister,

Emily M. Perry, and the other one-half to his nephew, S. F. Austin, Jr.; that before his will was probated the said S. F. Austin, Jr., died, leaving his mother, Eliza M. Hill, as his only surviving heir, and who inherited his portion of the estate of the said S. F. Austin.

"(3) That in 1846 a partition deed was executed by Emily M. Perry and her husband on the one part, and Eliza M. Hill on the other part, by the terms of which Eliza M. Hill received and obtained one-fourth of the estate of the said S. F. Austin, Sr., and Mrs. Emily M. Perry received and obtained three-fourths of the estate of the said S. F. Austin, Sr., and in this partition the said Eliza M. Hill was awarded the upper or west one-fourth of the upper or west one-half of the said Kuykendall league of land, said tract being described in said partition deed as follows: 'Beginning at the upper corner of said league on the river and running westwardly along the line thereof to corner, thence southeasterly along the line of said league to a point from where a line drawn parallel with the upper line of said league to the river, and thence up the river to the place of beginning, will include one-fourth of said one-half league of land'—said partition deed awarding to Emily M. Perry the remaining or lower three-fourths of the upper one-half of said league of land.

"(4) That at the time said partition was made of said upper one-half league of land between the said Emily M. Perry and Eliza M. Hill, said upper one-half of said league of land was supposed to contain one-half of a full league, or 2,214 acres of land, and that the upper or west line of said league was supposed to be 4,500 varas in length, when in truth and in fact said upper one-half of said league contained 1,921 acres of land, and the upper or west line of said league was 3,967 varas in length, instead of 4,500 varas, as called for in the original grant.

"(5) In 1851, after the death of Emily M. Perry, her husband, Jas. F. Perry, and her children, W. J. Bryan, M. A. Bryan, Guy M. Bryan, S. S. Perry, Henry Perry, and Eliza M. Perry (Hill), executed a partition deed, partitioning among themselves the estate of said Emily M. Perry, deceased, in which partition the children of said Emily M. Perry were awarded said upper three-fourths of said one-half of said Kuykendall league, less the upper one-eighth heretofore allotted to Eliza M. Hill; and in 1854 W. J. Bryan, Moses Austin Bryan, Guy M. Bryan, S. S. Perry, and Eliza M. Hill made a partial partition of the property inherited from their mother, by the terms of which partition deed, among other lands, Moses Austin Bryan was allotted a tract of land described as follows: 'Also a tract of land situated on the Colorado river on the west side and is known as a part of the Robert Kuykendall league. This tract allotted to said Moses Austin Bryan is the upper one-half of a tract which was allotted to said Emily M. Perry in the deed of partition with Eliza M. Hill, and lies below and adjoining the tract allotted to the said Eliza M. Hill in said deed of partition. The tract thus allotted to Moses Austin Bryan is supposed to contain 830 acres.'

"(6) That on November 16, 1872, Moses Austin Bryan conveyed the land awarded to him in said above-described partition deed, made in 1854 between the heirs of Emily M. Perry and Thos. Dyer, and that the plaintiffs inherited said land from the said Thos. Dyer, who died on or about the ——— day of ———, 189—. That said Eliza M. Hill, and her legal representatives after her death, owned and possessed the upper or west one-fourth of the upper or west one-half of said Kuykendall league, awarded to her in 1846 in said partition deed executed by her and Mrs. Emily M. Perry and her husband, until the 10th day of January, 1851, when Wm. G. Hill, administrator of the estate of Eliza M. Hill, deceased, conveyed said tract

of land to John W. Harris and E. M. Pease, in which conveyance said tract of land was described as follows: 'One-eighth league of land situated on the west bank of the Colorado river, being the upper one-fourth part of the upper one-half of the league granted by the government to Robert Kuykendall and bounded as follows: Beginning at the upper corner of said league on the west bank of said Colorado river, from thence a line to run westwardly along the upper line of said league to the upper back corner; thence southwestwardly along the back line of said league to a point on said line from which a line drawn parallel with the upper line of said league to the river Colorado, and thence up the river with its meanders to the place of beginning, so as to include one-fourth part of said upper one-half of said league.' That thereafter said E. M. Pease, through his administrator, conveyed his interest in said land to the heirs of John W. Harris, who are the defendants in this suit, and who through said deed, and as the heirs of the said John W. Harris, are the owners of said tract of land in the upper or western portion of said league formerly awarded to Eliza M. Hill.

"(7) That on or about the 16th day of November, 1872, Moses Austin Bryan conveyed to Thos. Dyer the tract of land awarded to him in the partition deed above mentioned between the heirs of Emily M. Perry, in which deed said tract of land (which is now known as the Kiber tract) is described as follows: 'The tract of land hereby conveyed contains 830 acres, more or less, and is known as a part of the Robert Kuykendall league on the west side of the Colorado river in Wharton county, that was allotted to me in the division of the estate of Stephen F. Austin, and the estate of Emily M. Perry, my mother, in the division of property among the heirs of said estate. The said tract of 830 acres is more fully described by the map and field notes made by Collingsworth, surveyor, hereto attached. That the field notes described in the map and plat attached to said deed give the field notes to said tract as follows: Beginning at the lower corner of the Hill tract, a stake from which a pecan 8 in. bears south 35 deg. east 1 vr., and an elm 6 in. bears 67 deg. west 4 vrs.; thence south 20 deg. west with said Hill line 4,725 vrs. to his corner; thence south 70 deg. east with the league line 952 vrs. to a stake; thence north 20 deg. east to a stake on the bank of the Colorado river, from which an ash 12 in. bears north 47 deg. west 3 vrs., a cottonwood 36 in. bears north 72 deg. east 4 vrs.; thence up the river with its meanders to the place of beginning.'

"(8) That the plat and field notes made by said surveyor, Collingsworth, attached to said deed from M. A. Bryan to Thos. Dyer, above mentioned, show that said survey and plat was made by said surveyor on March 16, 1860. Said survey shows that on said date a reasonably accurate survey of what was then known as the Hill tract of land (now the Harris tract) and the M. A. Bryan tract (and now known as the Kiber tract) was made by said surveyor, Collingsworth, and the dividing line between the two tracts of land was then located and marked by said surveyor, and I find that same is as claimed by plaintiff and as marked on Donaldson's map.

"(9) I further find that what is known as the Collingsworth line above mentioned between the Hill and Bryan tracts (now the Harris and Kiber tracts) of land in said Kuykendall league was many years ago marked and defined by old line marks on trees through the timber and by a ditch and levee thrown up through the prairies from a continuation of a marked line through the timber to the south line of said Kuykendall league, and that there has never been any dispute as to that being the true boundary line until the latter part of the year 1903, when the defendants had a survey of their lands made by Surveyor Lackey and

placed a fence 121 varas south or below what is known as the Collingsworth line, and what is here found to be the true dividing line between the lands of plaintiff and defendant, at which time, in December, 1903, defendants leased said land and a fence placed on the line now claimed by defendants, and have had same inclosed ever since.

"(10) I further find that when Surveyor Lackey surveyed this land in 1903, and established the fence line claimed by defendants as the dividing line, he established the line where he did solely because he considered that he had to give to that line in order to give defendants what he considered to be their quota of the entire league. And I further find that the plaintiffs in this suit never acquiesced in said line established by surveyor Lackey in 1903.

"Upon the foregoing findings of fact I find the following:

### "Conclusions of Law.

"This being confessedly, by the pleadings of both plaintiffs and defendants, a boundary suit, I find as a matter of law that the plaintiff was not required to prove a superior title to the land on her side of the alleged boundary. This conclusion is sustained further by the fact that plaintiffs and defendants claim through a common source. Wardlow v. Harmon, 45 S. W. 828.

"I further find as a matter of law that the defendants cannot be supported by their pleas of three and five years' limitation, because the possession held by defendants was through a lease to tenants, and not under deeds, and the possession of Bond (the tenant) was the possession of defendants, and emanated from defendants only, and not from any other source. White et al. v. Rosser, 27 S. W. 1062; Hill et al. v. Harris et al., 26 Tex. Civ. App. 408, 64 S. W. 820.

"I further find that the true boundary line between plaintiff's and defendants' lands begins at a point on the south line of the Kuykendall league 647 varas south 70 deg. east from the southwest corner of said Kuykendall league, and runs thence north 20 degrees east to the Colorado river. I therefore find for the plaintiffs for the land sued for."

[1, 2] It would serve no useful purpose to set out and discuss in detail the various assignments of error presented in appellants' brief. Under appropriate assignments appellants assail the judgment on the ground that the court erred in holding that the suit was one of boundary, and appellees were therefore not required to show title to the land claimed and recovered by them.

We think the record supports the court's finding that the suit, though in the form of an action of trespass to try title, involved only an issue of boundary, and both parties during the trial regarded the suit as one for the establishment of the boundary line between the lands of plaintiffs and defendants. The answer of defendants before quoted expressly avers "that the issue in this case is one of boundary between the lands of plaintiffs and defendants," and claimed that the line upon which defendants' fence had been placed was located a number of years ago, and plaintiffs had acquiesced in the line so established. These averments are in effect an admission that plaintiffs own the land on one side of the line, the location of which is in dispute, the land on the opposite side being owned by the defendants, and this ad-

mission relieved the plaintiffs of the necessity of proving title to their land, notwithstanding defendants' plea of not guilty. When defendants averred that the issue in the case was one of boundary between their land and plaintiffs, and asked that the boundary between their land and plaintiffs be fixed at a designated location, they as effectually disclaimed title to the land not included in the boundaries claimed by them as if they had so stated in express words.

In the case of Wardlow v. Harmon, 45 S. W. 828, plaintiff brought suit in the form of an action of trespass to try title. The defendant, after pleading not guilty, filed a special plea alleging that some years before the filing of the suit "plaintiff and defendant, each owning tracts of land adjoining each other, agreed upon and established the boundary line between their respective tracts, which has been acquiesced in and recognized as the true division line between them; that defendants claim no land north of said line, but claim the land south of same." It was held in that case that the trial court correctly treated the suit as one to establish a boundary line, and that, defendant's plea above set out being equivalent to a disclaimer, the court did not err in refusing to instruct the jury that plaintiff could only recover upon the strength of his title. We do not think the instant case can upon this point be distinguished from the case cited.

The mere fact that a defendant, in answer to a suit of trespass to try title, in addition to a plea of not guilty, pleads special defenses, would not destroy the effect of the plea of not guilty and relieve plaintiff of the necessity of proving his title. This is the holding in the case of Koenigheim v. Miles, 67 Tex. 117, 2 S. W. 81. But when, as in this case, the defendant by his special plea admits that the only issue in the case is one of boundary, and that the plaintiff owns the land adjoining the boundary line of defendant's land, there can be no reason for requiring plaintiff to prove his title.

After careful consideration of the evidence upon the question of the location of the line between the lands of plaintiffs and defendants, we cannot say the finding of the trial court that the line is located as claimed by plaintiffs is without evidence to support it, or that such finding is against the great weight and preponderance of the evidence. The line found by the court to be the true line is shown to have been marked 60 years or more ago. If the distance from the river out to the south line of the league had been as great as that called for by the field notes of the grant for the length of the west line of the league, the location of the east line of the one-eighth of the league set apart to Mrs. Hill and now owned by the defendants, as claimed by the plaintiffs and found by the court, would have given the Hill tract approximately its proportionate number of acres. There is no evidence of any other line

which could have been the boundary line between the Hill tract and the tract now owned by plaintiff. The evidence further shows that plaintiffs' predecessor in title had a survey of their land made in 1861, and established the line where plaintiffs now claim it to be. The court having found from this evidence that the old marked line now shown upon the land is the original boundary line between the lands of plaintiffs and defendants, we do not feel authorized to reverse such finding.

The evidence being sufficient to sustain the finding of the court that the boundary of defendants' land is located as claimed by plaintiffs, it follows that none of plaintiffs' land is included within the boundaries described in defendants' deed, and therefore defendants' pleas of limitation of three and five years cannot be sustained. The evidence failed to show continuous possession by defendants of any portion of the land for a period of ten years.

We have considered each and all of appellants' assignments of error. If any error is shown by any of them, it is not such as could have probably affected the result of the trial, and none of the assignments can be sustained.

It follows that the judgment of the court below should be affirmed, and it has been so ordered.

Affirmed.

### On Motion for Rehearing.

In our opinion in this case filed on February 18, 1915, in which the judgment of the court below was affirmed, we held that the evidence was sufficient to sustain the finding of the trial court that the line between the lands of plaintiffs and defendants is located as claimed by plaintiffs.

[3-5] A further investigation of the record has convinced us that we erred in this holding. The evidence is sufficient to sustain the finding that many years ago plaintiffs' predecessors in title located the line as now claimed by plaintiffs, but there is no evidence that defendants, or any of their predecessors in title, agreed to or acquiesced in such location, or that any of them ever knew that such location of the line had been made.

The record shows that in 1846 Mrs. Emily M. Perry and Mrs. Eliza M. Hill, who were then the joint owners of the upper or northwestern one-half of the Robert Kuykendall league of land in Wharton county, executed a deed of partition by which there was conveyed to Mrs. Hill the upper one-fourth of said one-half of the league. The land so conveyed to Mrs. Hill is described in said deed as follows:

"Beginning at the upper corner of said league on the river and running westwardly along the line thereof to corner; thence southeasterly along the line of said league to a point from where a line drawn parallel with the upper line of said league to the river, and thence up the river to the place of beginning, will in-

clude one-fourth of said one-half league of land. * * *"

By this partition deed the remainder of said one-half of the league was conveyed to Mrs. Perry. On January 10, 1851, the administrator of Mrs. Hill conveyed to John W. Harris and E. M. Pease the land conveyed to Mrs. Hill by the deed of partition before referred to. In the administrator's deed the land is described as follows:

"One-eighth of a league of land situated on the west bank of the Colorado river, in Wharton county, being the upper one-fourth of the upper half of the league granted by the government to Robert Kuykendall, and bounded as follows: Beginning at the upper corner of said league on the west bank of the Colorado river, from thence a line to be run westwardly along the upper line of said league to the upper back corner, thence southwardly along the back line of said league to a point on said line from whence a line drawn parallel with the upper line of the league to River Colorado, and thence up the river with its meanders to the place of beginning, so as to include one-fourth part of said upper half of said league."

The executrix and trustee under the will of E. M. Pease, by deed of date September 22, 1898, conveyed to the widow and children of John W. Harris the one-half interest owned by E. M. Pease in the land described in the deed next above mentioned. Defendants in this suit hold under this deed and by inheritance from John W. Harris and his wife, Annie P. Harris. The grantees in the above deeds unquestionably acquired title to one-fourth of the upper one-half of the Kuykendall league located in accordance with the description contained in said deeds. If by agreement of defendants, or those under whom they claim, with the owners of the adjoining portion of the one-half of the league, the division line between the upper one-fourth and the remaining portion of the half of the league had been fixed and marked on the ground at a place other than called for in the deeds to the upper one-fourth, defendants would be bound by such boundary or division line, and they might be so bound by acquiescence in a division line fixed by the owners of the adjoining land, but in the absence of any evidence of agreement or acquiescence they cannot be held to any line other than one located in accordance with the calls in their deeds. Lagow v. Glover, 77 Tex. 450, 14 S. W. 141; Horst v. Herring (Sup.) 8 S. W. 307; Kampmann v. Heintz (Civ. App.) 24 S. W. 329; Donaldson v. Hall, 14 Tex. Civ. App. 336, 37 S. W. 16.

The deed from Robert Kuykendall to Stephen F. Austin, under which Mrs. Perry and Mrs. Hill held title to the upper half of the Kuykendall league, describes said half league as follows:

"From the upper corner on the W. margin of the Colorado river the surveyor comc'd; thence S. 20° W. 4500 vrs., fol'g the upper bound of the aforesaid sitio to the S. W. corner; thence S. 70° E. to a point from which a line thrown N. 20° E. to the said Colorado river; thence following the turns of the river up to the place of beg. at the upper corner of the said sitio, to comprehend the upper or northern half of

the aforesaid sitio, bounded on the E. by the said Colorado river, on the S. by the lower half of my said sitio, and on the other side by vacant lands."

It is clear from this description that the dividing line between the upper and lower half of the league was not fixed and marked on the ground prior to or at the time this deed was executed, and there is no evidence in the record showing when or by whom said line was actually located and marked upon the ground. The evidence does show the existence of an old line dividing the upper and lower portions of the league, located near where a line run in accordance with the calls in this deed would place it; but there is no evidence that defendants, or any of their predecessors in title, agreed to or acquiesced in the location of this line, or ever recognized it as the dividing line of the league. Such being the state of the evidence, defendants are no more bound by this line than by the old line which plaintiffs claim is the division line between defendants' one-fourth of the upper half of the league and the remainder of said half of the league. The evidence shows that up to 1903, when the defendants established the line now claimed by them and took actual possession of their land, claiming and holding it up to said line, this half league of land was unoccupied. None of the defendants lived in that neighborhood, and there is no evidence of any intercourse between them and the owners of the adjoining land, or that they had any knowledge of the doings or claims of plaintiffs or any of their predecessors in title. The undisputed evidence further shows that the location of the line as claimed by defendants does not give them more than one-eighth of the league, the quantity to which they are clearly entitled under their deed, in the absence of any evidence that they or their predecessors in title had agreed to or acquiesced in the location of the division line at some other place than that called for in the deeds. The undisputed evidence further shows that defendants had held continuous adverse possession of a portion of the land in controversy for more than 5 years before this suit was brought, claiming to the boundaries called for in the deeds under which they hold, and paying all taxes thereon as they accrued.

These facts alone would give defendants title to all of the land embraced within the boundaries of the deeds under which they claim, even if the evidence was sufficient to show that the line had been actually located at a place other than that called for in defendants' deeds, under circumstances binding upon defendants. A line located by agreement or acquiescence of the parties in interest would upon the issue of boundary be held binding upon the parties and their privies; but such location of a line would not change the boundaries of the land as defined in the deed, nor prevent one holding and claiming under the deed from acquiring title by limitation to all of the land included in its boundaries, if the other requirements of the statute of limitation are shown. Jones v. Andrews, 62 Tex. 668; Bean v. Whitney, 25 Tex. Civ. App. 72, 60 S. W. 782.

It follows, from the conclusions above expressed, that appellants' motion for rehearing should be granted, our judgment of affirmance set aside, the judgment of the court below reversed, and judgment here rendered for appellants; and it has been so ordered.