

# COURT OF APPEALS

### SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 2-09-349-CV

LASALLE GUPTON, STEPHANIE
PATTERSON, MONIQUE GUPTON,
AND YOLANDA RAWLSTON

APPELLANTS

V.

NATHANIEL ALLEN

APPELLEES

------------

FROM THE 348TH DISTRICT COURT OF TARRANT COUNTY

------------

## MEMORANDUM OPINION[1]

------------

## I. Introduction

---

[1]*See* Tex. R. App. P. 47.4.

Appellants Lasalle Gupton, Stephanie Patterson, Monique Gupton, and Yolanda Rawlston (collectively, the Guptons) appeal the judgment in favor of appellee Nathaniel Allen, intervenor below, on his unjust enrichment claim and the trial court's order that the Guptons pay all ad litem attorney fees for defendants Ronaldo Beasley and U.S. Affiliates, Inc. (the Defendants). We reverse and render in part and affirm in part.

## II. Background

Appellant LaSalle Gupton and his wife, Betty, bought a house in Fort Worth, Texas, in 1966.[2] In 2005, the Guptons filed a lawsuit alleging that Beasley fraudulently transferred the property to himself by deed in July 2002. Beasley recorded the alleged deed from Betty and LaSalle on July 10, 2002. In 2003, Beasley transferred the property to Joseph Lamar Butler, Jr. by warranty deed with vendors lien, assigned Butler's note to Richland Mortgage, Inc., and filed the deed of trust with the county. U.S. Affiliates bought the property on March 1, 2005, via a foreclosure sale. The property transferred from U.S. Affiliates to RTI Properties in September 2007. Allen then purchased the property from RTI Properties in December 2007.

---

[2]Betty Gupton died intestate in 1975.

2

On January 19, 2008, Patterson, LaSalle Gupton's daughter, drove by the house and saw people working on it. She asked the workers to stop because the Guptons had not authorized the work and had not sold the property. After receiving Allen's contact information from the workers, Patterson phoned Allen on January 20, 2008, and Allen stopped the work on the property after speaking with his title company.

In their original petition and in a "Synopsis" filed with the trial court, the Guptons requested the trial court to order that the Defendants' deeds be declared invalid and removed from the Guptons' title, that title be quieted in the Guptons, and that the Defendants pay exemplary damages, attorney's fees, and litigation costs.

In March 2009, Allen intervened in the Guptons' lawsuit, stating that he

> does not at this time affirm or deny the allegations made by [the Guptons] in this lawsuit, but . . . does demand strict proof of [the Guptons'] claims. If [the Guptons] cannot make strict proof of their right to ownership of the property, then [Allen] requests the Court to enter its Order declaring that [Allen] has title to, and [the Guptons] are divested of title to, that portion of the property to which [the Guptons] are unable to prove that they have title.

In the alternative, Allen sought "reimbursement of the sums he has spent on the property" because the Guptons "would be unjustly enriched if they were allowed to take title to and possession of the property without having to pay for the

3

expenditures made on the property that were their responsibility had they actually exercised ownership rights."

At the March 31, 2009 bench trial, the Guptons and Allen appeared in person and through their respective attorneys, and Beasley appeared through his appointed attorney ad litem.[3]   Allen testified that when he purchased the property, he had not observed anyone living on the property since the early 1990s,[4] that windows were shattered, that copper pipes and wiring were missing, that trash was "all over" the inside and outside of the property, and that the City of Fort Worth had filed mowing liens against the property.   In December 2007, Allen spent $2,500 to have two trailers of debris removed from the property and paid one-third of a $36,000 contract to begin repairing the property.   Allen testified that all of the work performed benefitted the property, but he did not offer evidence of any improvement to the market value of the property resulting from the work.

---

[3]U.S. Affiliates, Inc. failed to appear and did not file an answer despite being served with citation.   Beasley was not located or served and is believed to be a fictitious person.

[4]Allen's primary residence is his parents' house, five houses from the Guptons' property.

4

On July 6, 2009, the Guptons filed a motion for directed verdict against the Defendants and Allen. On September 10, 2009, the trial court declared Betty's and LaSalle's signatures on the deed to Beasley to be forged and voided any deed and title claimed by Beasley and U.S. Affiliates, Inc. The trial court also denied the Guptons' motion for directed verdict, imposed a superior lien and constructive trust on the property for $14,500 in favor of Allen, imposed a lien in the amount of $3,000 for Beasley's ad litem attorney's fees, and adjudged all court costs against the Defendants jointly and severally. The Guptons timely filed their notice of appeal.

## IV.   Analysis

### A.   Trespass to Try Title Action

In their first issue, the Guptons contend that their lawsuit is one for trespass to try title, that Allen was required to establish the amount by which his improvements to the property increased the property's value, and that Allen failed to present any such evidence. They argue that because Allen did not present evidence of an increased value to the property as a result of his improvements, Allen is barred from recovery. In contrast, Allen contends that his claim for reimbursement for improvements to the property is based in equity; he contends that he is entitled to restitution—not limited to the property's enhanced value

5

caused by his repairs and improvements—because the Guptons would be unjustly enriched by virtue of his improvements to the property.

We agree that the Guptons' suit is one for trespass to try title. Section 22.001(a) of the property code states: "A trespass to try title action is the method of determining title to lands, tenements, or other real property." Tex. Prop. Code Ann. § 22.001(a) (Vernon 2000). In their original petition, the Guptons asked that the trial court declare the deeds to the Defendants invalid and that title be quieted in their favor. In addition, Allen stated in his plea in intervention that he was "the present record owner" of the property and that "if [the Guptons] cannot make strict proof of their right to ownership of the property, then [Allen] requests the Court to enter its Order declaring that [Allen] has title to, and [the Guptons] are divested of title to" the property. Thus, title to the property was clearly at issue in the case, and the action was one for trespass to try title under Chapter 22 of the property code. *See id*; *see also Yoast v. Yoast*, 649 S.W.2d 289, 292 (Tex. 1983) ("A trespass to try title action is a procedure by which rival claims to title or right of possession may be adjudicated."). And because the Guptons' suit is one for trespass to try title, Allen is limited to recovery of the amount by which his improvements increased the value of the property. *See* Tex. Prop. Code Ann. § 22.021(a); *see also Root v. Mecom*, 542 S.W.2d 878, 882 (Tex. Civ. App.—Beaumont 1976, pet. dism'd) (stating that the person claiming improvements to the property "had the burden of pleading and proving the extent

6

to which good faith improvements, if any, had enhanced the value of the land in question").

Here, Allen cites no authority supporting his contention that he is entitled to recover the cost of the improvements under the theory of unjust enrichment because of his good-faith improvements to the Guptons' real property. Allen testified that he hauled away trash, cleaned the property, and hired a contractor to begin repairing the property. However, Allen did not present any evidence of the property's enhanced value as a result of the repairs and improvements to the property. Because Allen failed to establish the amount of enhancement of the property's value because of the repairs or improvements, he is precluded from recovering any compensation for the improvements. *See* Tex. Prop. Code Ann. § 22.021(a). We sustain the Guptons' first issue.[5]

## B.   Guptons Solely Responsible For Ad Litem Attorney Fees

---

[5]In light of our disposal of the Guptons' first issue, we need not address their second issue. However, we note that even if the Guptons' claim is not one for trespass to try title, Allen would still be limited to recovery of the enhanced property value, not the cost of the improvements. *See Sharp v. Stacy*, 535 S.W.2d 345, 351 (Tex. 1976) ("The principle is well established in equity that a person who in good faith makes improvements upon property owned by another is entitled to compensation therefor. The measure of compensation to the claimant is not the original cost of the improvements, but the enhancement in value of the land by reason of the improvements.").

In their third issue, the Guptons urge this court to reverse the portion of the trial court's judgment that requires them to pay all of the Defendants' ad litem attorney fees and argue that Allen should be required to share half of the ad litem attorney fees. However, the Guptons cite no legal authority and present no argument regarding this issue. *See* Tex. R. App. P. 38.1(i) (providing that a brief must contain appropriate citations to authorities). An issue unsupported by argument or authority presents nothing for the court to review. *AMX Enter., L.L.P. v. Master Realty Corp.*, 283 S.W.3d 506, 525 (Tex. App.—Fort Worth 2009, no pet.) (op. on reh'g). Accordingly, we overrule the Guptons' third issue.

## V.  Conclusion

Having sustained the Guptons' first issue, we reverse the trial court's judgment of $14,500 for Allen and render judgment that Allen take nothing. Having overruled the Guptons' third issue, we affirm the remainder of the trial court's judgment.

ANNE GARDNER
JUSTICE

PANEL:  LIVINGSTON, C.J.; GARDNER and MEIER, JJ.

DELIVERED:  October 28, 2010

8